# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | **Case No. 19-11749-REN** |
| **PIXIUS COMMUNICATIONS, LLC,** | ) | **Chapter 11** |
| | ) | |
| Debtor-in-possession. | ) | |

## DISCLOSURE STATEMENT WITH RESPECT TO
## <u>JOINT CHAPTER 11 PLAN OF LIQUIDATION</u>

J. Michael Morris      KS Bar No. 9292
Eric W Lomas          KS Bar No. 23769
Christopher A. McElgunn      KS Bar No. 13359
Klenda Austerman LLC
1600 Epic Center
301 North Main Street
Wichita, KS 67202-4816
Telephone:  (316) 267-0331
Facsimile :  (316) 267-0333
elomas@klendalaw.com
cmcelgunn@klendalaw.com
jmmorris@klendalaw.com

**ATTORNEYS FOR DEBTORS**

Scott J. Goldstein
Eric L. Johnson
Andrea M. Chase
**SPENCER FANE LLP**
1000 Walnut, Suite 1400
Kansas City, MO 64106
Telephone:  (816) 474-8100
Facsimile:  (816) 474-3216
sgoldstein@spencerfane.com
lepps@spencerfane.com
ejohnson@spencerfane.com

**ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**Date: September 1, 2020**

# I.    INTRODUCTION AND DISCLAIMER

Debtor Pixius Communications, LLC ("Debtor") and the Official Committee of Unsecured Creditors (the "Committee") submit their Joint Disclosure Statement (this "Disclosure Statement") to holders of Claims against and Interests in Debtor in connection with the solicitation of acceptances of the Joint Plan of Liquidation, as the same may be amended (the "Plan"), a copy of which is attached as **Exhibit A**. Unless otherwise defined, all capitalized terms contained herein have the respective meanings assigned to them in the Plan.

This Disclosure Statement describes certain aspects of the Plan, the Chapter 11 Case, Debtor's liquidation and wind-down and the formation of the Liquidating Trust. Under the Plan, (a) Holders of Allowed Fee Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed General Unsecured Claims and Allowed Secured Claims will be deemed to hold interests in the Liquidating Trust and (b) the Interests will be cancelled and terminated. The Liquidating Agent will be charged with: (i) pursuing Remaining Actions on behalf of Creditors; (ii) analyzing and reconciling Claims that have been filed against the Estate; and (iii) making distributions on account of Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement entered into with respect thereto. For a complete understanding of the Plan, you should read the Disclosure Statement, the Plan and the exhibits and schedules thereto, in their entireties.

Debtor and the Committee believe that confirmation of the Plan is in the best interests of all parties, including Creditors and the Estate. Accordingly, Debtor and the Committee urge each Creditor that is impaired hereunder, and entitled to vote with respect to the Plan, to vote to accept the Plan. To be counted, a ballot containing your vote to accept or to reject the Plan must be received by Debtor by no later than 5:00 p.m. (Central Time) on _____ __, 2020.

**NO REPRESENTATIONS CONCERNING DEBTOR OR THE PLAN ARE AUTHORIZED BY DEBTOR AND THE COMMITTEE OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE THAT ARE OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. ANY NON-DEBTOR OR NON-COMMITTEE REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR OR THE COMMITTEE, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT. DEBTOR AND THE COMMITTEE ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN TAKEN TO MAKE SURE IT FAIRLY REPRESENTS THE CURRENT POSITION OF DEBTOR.**

**FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ALL SUMMARIES. IF ANY INCONSISTENCY EXISTS**

WA 15097527.3

BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING. SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THE DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE, AND ARE SUBJECT TO AND QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE APPLICABLE AGREEMENTS.

SECTION 1125 OF THE BANKRUPTCY CODE REQUIRES THAT THERE BE A POST-PETITION DISCLOSURE IN THE FORM OF A DISCLOSURE STATEMENT THAT PROVIDES "ADEQUATE INFORMATION" TO CREDITORS BEFORE ANYONE MAY SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN. THIS DISCLOSURE STATEMENT IS PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE SO AS TO PROVIDE "ADEQUATE INFORMATION" TO CREDITORS IN THIS PROCEEDING. CREDITORS ARE URGED TO CONSULT WITH THEIR OWN INDIVIDUAL COUNSEL OR EACH OTHER AND TO REVIEW ALL OF THE RECORDS HEREIN IN ORDER TO FULLY UNDERSTAND THE DISCLOSURES MADE, ANY PLANS FILED HEREIN AND ANY OTHER PERTINENT INFORMATION IN THIS PROCEEDING. ANY PLAN WILL BE COMPLEX, ESPECIALLY SINCE IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT, AND ANY INTELLIGENT JUDGMENT CONCERNING ANY PROPOSED PLAN CANNOT BE MADE WITHOUT FULLY UNDERSTANDING THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE FULL COMPLEXITIES OF ANY PLAN PROPOSED HEREIN. THIS DISCLOSURE STATEMENT IS NOT INTENDED TO TAKE THE PLACE OF THE PLAN. EACH CREDITOR IS URGED TO STUDY THE PLAN IN FULL AND TO CONSULT ITS COUNSEL WITH RESPECT TO THE PLAN, ITS TAX IMPLICATION(S) AND ITS EFFECT ON HIS, HER OR ITS RIGHTS.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND BECOMES EFFECTIVE, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS (INCLUDING THOSE WHO REJECTED OR WHO ARE DEEMED TO HAVE REJECTED OR ACCEPTED THE PLAN AND THOSE WHO DID NOT SUBMIT BALLOTS TO ACCEPT OR TO REJECT THE PLAN) SHALL BE BOUND BY THE TERMS OF THE PLAN.

## II. VOTING AND CONFIRMATION PROCEDURES

Under the Bankruptcy Code, classes of claims that are unimpaired under a Chapter 11 plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the Plan. Classes of claims and interests that are not entitled to receive any distribution on account of their

WA 15097527.3

claims or interests are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

Under the terms of the Plan, the holders of Allowed Claims in Classes 2 and 3 are entitled to vote to accept or reject the Plan.

Votes on the Plan are not being solicited from holders of Claims in Class 1, which are unimpaired and deemed to have accepted the Plan. Votes on the Plan are also not being solicited from holders of Class 4 Interests. Holders of Class 4 Interests in Class 4 will receive no distribution under the Plan and, therefore, are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## A.    Voting Procedures

If you are entitled to vote to accept or reject the Plan, a ballot is enclosed for the purpose of voting on the Plan. Please carefully follow the instructions set forth in the ballot and vote and return your ballot(s), by first class mail, hand or overnight courier, to:

| If by First Class Mail to: | If by Overnight Courier or Personal Delivery: |
|---|---|
| _____ <br> _____ <br> _____ | _____ <br> _____ |

**TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN 5:00 P.M. (CENTRAL TIME) ON _____ \_\_, 2020 (THE "VOTING DEADLINE").**

**ANY BALLOT WHICH IS EXECUTED BUT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN, OR WHICH BOTH THE ACCEPTANCE AND REJECTION BOX IS CHECKED, WILL BE DEEMED TO BE AN ACCEPTANCE OF THE PLAN. ANY BALLOT THAT IS EITHER UNRETURNED BY THE VOTING DEADLINE OR IS RETURNED BUT NOT EXECUTED WILL BE CONSIDERED NULL AND VOID AND WILL NOT BE COUNTED.**

If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot, received a damaged ballot or lost your ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please call counsel for Debtor or the Committee.

4

WA 15097527.3

## B. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing to determine whether the Plan meets the requirements for confirmation established by section 1129 of the Bankruptcy Code. Any party-in-interest may object to confirmation of the Plan. The Bankruptcy Court has scheduled the Confirmation Hearing for _____ __, 2020, at_____. Notice of the Confirmation Hearing has, or will be, provided to all holders of Claims and interests and other parties-in-interest (the "Confirmation Notice").

Objections, if any, to confirmation of the Plan must: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim or interest of such party; (iii) state with particularity the basis and nature of any objection; and (iv) in accordance with Bankruptcy Rule 3020(b)(1), be filed, together with proof of service, with the Bankruptcy Court and served on the following parties so that they are received on _____ __, 2020 (the "Objection Deadline"): (a) counsel for Debtor, J. Michael Morris, Klenda Austerman LLC, 1600 Epic Center, 301 North Main Street, Wichita, KS 67202-4816, elomas@klendalaw.com, cmcelgunn@klendalaw.com, jmmorris@klendalaw.com; (b) counsel for the Committee, Andrea M. Chase, Scott J. Goldstein, Eric L. Johnson, Spencer Fane LLP, 1000 Walnut Street, Suite 1400, Kansas City, Missouri 64106-2140, achase@spencerfane.com, sgoldstein@spencerfane.com, ejohnson@spencerfane.com; and (c) Counsel for the United States Trustee, Christopher T. Borniger, christopher.t.borniger@usdoj.gov. **UNLESS AN OBJECTION TO PLAN CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## III. GENERAL INFORMATION

## A. Description and History of Debtor's Business

The Debtor was a provider of fixed broadband internet services, primarily for rural customers. The company had approximately 5,000 customers in three general service areas: Wichita (central Kansas), Kansas City, and Southeast Kansas-Southwest Missouri. Over a number of years the Debtor incurred substantial debt for acquisition of equipment, and operations. The Debtor also had a number of leases for space on cell phone towers, and other locations such as grain elevators, used for the debtor's "line of sight" wireless service to customers. The Debtor was structured as a Limited Liability Company. The List of Equity Security Holders lists 83 members. Wireless internet service is a rapidly expanding and changing business. Because of economics of scale based on the Debtor's relatively small size, it could not afford continuing requirements to upgrade equipment so as to compete. The Debtor had trouble paying its liabilities

WA 15097527.3

and a number of lawsuits were filed. The Debtor filed this bankruptcy on September 13, 2019, with the goal of an orderly liquidation.

## IV. THE CHAPTER 11 CASE[1]

As a consequence of Debtor's commencement of the Chapter 11 Case, all actions and proceedings against Debtor and all acts to obtain property from Debtor were stayed under section 362 of the Bankruptcy Code.

### A. Relevant Chapter 11 Filings

**1. First-Day Motions.** In an effort to minimize the impact of the commencement of the Chapter 11 Case on Debtor's operations and to facilitate the administration of the Chapter 11 Case, Debtor filed various motions and applications on the first day of the Chapter 11 Case.

**2. Retention of Professionals.** Debtor filed applications requesting approval by the Bankruptcy Court of its retention of various professional firms they have been utilizing throughout the Chapter 11 Case, including: (i) Klenda Austerman LLC as bankruptcy counsel; and (ii) Melvin C. Bird, as accountant. The Bankruptcy Court entered orders approving the retention of these professionals.

**3. Schedules and Statements.** Debtor filed its Schedules and Statement of Financial Affairs on October 11, 2019 (as may have been amended, the "Schedules and Statements"). The meeting of creditors under section 341(a) of the Bankruptcy Code was held on October 17, 2019, in Wichita, Kansas, at which representatives of Debtor were questioned by creditors, creditors' representatives and a representative from the Office of the United States Trustee. Creditors are expressly referred to the Schedules and Statements, as amended from time to time as necessary, which are on file in these proceedings, for the purpose of becoming fully informed as to the assets, liabilities and financial affairs of Debtor as of the Petition Date.

**4. Sale of Substantially All of Debtor's Assets.**

On September 27, 2019, Debtor filed its Motion to Approve the Sale of Substantially All of Its Assets Free and Clear of All Liens, Interests, Claims and Encumbrances, and Related Procedures and Bid Protection Pursuant to 11 U.S.C. § 363 and Related Relief Pursuant to 11 U.S.C. §§ 102 and 105, as supplemented and amended (the "Sale Motion").

On December 4, 2019, the Bankruptcy Court entered its Order Approving Procedures for the Solicitation of Offers for the Sale of Substantially All of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Interests and Related Relief (the "Bid Procedures Order"). The

---

[1]Section IV of the Disclosure Statement is only a summary of the Chapter 11 Case. For a full list of motions and pleadings filed, Debtor and the Committee refer parties-in-interest to the docket of the Chapter 11 Case, which can be accessed through the Bankruptcy Court's PACER system (account required) at ecf.ksb.uscourts.gov.

WA 15097527.3

Bid Procedures Order approved certain bid procedures and other relief requested in the Sale Motion.

On February 7, 2020, the auction of substantially all of Debtor's non-real estate assets was held.

Pursuant to the Sale Order entered on March 19, 2020, LTD Broadband, LLC, or its assigns, was approved as the successful bidder for the assets set forth in the APA.

Pursuant to Order entered January 2, 2020 the Debtor sold its real estate to Voslieson, LLC.

## B. Committee Participation in the Chapter 11 Case

Pursuant to section 1102(a) of the Bankruptcy Code, on October 24, 2019, the U.S. Trustee appointed the Committee. The Committee retained Spencer Fane LLP as its counsel.

Since the appointment of the Committee, the Committee has taken an active role in the Chapter 11 Case. Consistent with its duties under section 1103 of the Bankruptcy Code, the Committee: (i) consulted with Debtor on the administration of the Chapter 11 Case; (ii) investigated the acts, conduct, assets, liabilities and financial condition of Debtor, the operation of its business and matters relevant to the Chapter 11 Case; and (iii) participated in drafting and formulating the Plan and the Disclosure Statement.

## V.     FINANCIAL INFORMATION

## A.     Assets

The following assets will be transferred to the Liquidating Trust on or before the Effective Date. The assets are described in Section 1.71 of the Plan as follows:

"Trust Assets" shall mean all assets and Property of Debtor transferred to the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement, including, but not limited to, the Excluded Assets (as defined in section 1.3 of the APA), the Avoidance Actions, the Remaining Actions, and all claims and causes of action asserted by the Committee.

**Exhibit B** is a list of transfers disclosed in the Schedules and Statements or other pleadings in this case. The categories of potential actions include Avoidance Actions, other Claims against Insiders and other Claims. Each of these categories is discussed in more detail below.

**Avoidance Actions.** The Liquidating Agent may be able to pursue Avoidance Actions against recipients of preferential transfers made in the 90 days prior to the commencement of the Chapter 11 Case under section 547(b) of the Bankruptcy Code. The Schedules and Statements indicate that Debtor made at least $1,132,105.00 in transfers to non-insiders in the 90 days prior to the Petition Date, certain of which may be recoverable as preferential and/or fraudulent transfers. The Debtor may also have made transfers to insiders in the one (1) year prior to the Petition Date, certain of which may be recoverable as preferential and/or fraudulent transfers.

WA 15097527.3

Additional claims may exist for transfers made in the four (4) years prior to the Petition Date. Among other things, these transfers may be recoverable because they constitute fraudulent transfers.

**Other Claims Against Insiders.** In addition to the transfers described above, additional claims may exist against Insiders (including directors and officers) of Debtor. Such Claims may include, among other things, breach of fiduciary duty claims.

**Other Claims.** The Liquidating Agent may be able to assert other claims belonging to Debtor and its Estate. Such claims would include, without limitation, claims for breach of contract, tort, the Bankruptcy Code, or other federal or state law.

On the Effective Date there should be unencumbered funds in the estate equal to approximately $18,800.00. In addition, the Secured Claimants may agree to allow some amount from the proceeds of the Asset Sale to provide a limited amount of initial funding to the Liquidating Agent.

## B.  Liabilities

### 1.  Administrative Claims.

**a.  Debtor's Professionals.** As of the anticipated Confirmation Date, the Debtor's Professionals will have claims of approximately $75,000.00 (after taking into account the retainer and $135,000.00 Debtor's Counsel Carve-Out) with respect to accrued but unpaid fee claims.

**b.  The Committee's Professionals.** As of the anticipated Confirmation Date, the Committee's Professionals will have claims of approximately $_____ (after taking into account the $35,000.00 Committee Carve-Out) with respect to accrued but unpaid Fee Claims.

**c.  Other Administrative Expense Claims.** There are other potential administrative claims which total $641,488.00. Some of these claims are subject to pending objections. The listed amount does not include U.S. Trustee fees of approximately $25,000.00.

In addition, amounts remain due to creditors as to assumed leases ($14,405.73) and to the buyer of Debtor's non-real estate assets (approximately $149,500.00). The later amount is pending for

8

WA 15097527.3

determination. These two amounts might be administrative expenses, or deemed secured claims to be paid from the sale proceeds.

**2. Priority Claims.**

**a. Claims of Governmental Unit Taxing Bodies.** Priority Tax Claims are estimated at approximately $616,957.00.

**b. Other Priority Claims.** Non-tax Priority Claims against Debtor are in the approximate amount of $2,667.81. This figure is based on Claims filed to date or scheduled by Debtor and is subject to further reconciliation or other adjustment by the Liquidating Agent.

**3. General Unsecured Claims**. General Unsecured Claims in Class 2 total approximately $18,805,977.00, based upon the Schedules and Statements and the proofs of claim filed.

**4. Secured Claims.** As of the Confirmation Date of the Plan, Secured Claims total approximately $7,769,903.00. The listed amount is based on the claims register and includes claims which have been paid in part, as well as some duplications. By Order filed May 18, 2020 the Bankruptcy Court partially granted the Debtor's Omnibus Motion to Determine Amount of Secured Claims. A total of $34,558.84 of Secured Claims were allowed under such Order. Additional claims of approximately $6,233,765.00 remain to be resolved.

There shall be a global mediation concerning all unresolved Secured Claims that exist on the Effective Date and which shall include all claims by WISPer Ventures Leasing, LLC (WISPer") including any claims of equitable subordination. This shall include but not be limited to claims under 11 U.S.C. §§ 506(c), 510 and Avoidance Actions (as to any Secured Claimant). By entry of the Confirmation Order, the Liquidating Agent, all Secured Claimants and WISPer (the "Parties") shall be required to attend such mediation and subject to further orders of the Court as to time, process, discovery, statements and other requests of said mediation. Notwithstanding anything to the contrary and subject only to further order of the Court, such mediation shall occur no later than ninety (90) days from the Effective Date. If the mediation is unsuccessful, the Liquidating Agent shall be required to institute litigation to resolve all mediated issues within sixty (60) days from the conclusion of the mediation. The Liquidating Agent shall have the right to add parties to the mediation by providing notice to the Parties.

**5. Class 4 Interests.** This class of Interests consists of any legal or equitable interest in Debtor, including any ownership interest or right to acquire any ownership interest Debtor.

## VI.    PLAN OF LIQUIDATION

**A.    Objectives of the Plan**

The primary objectives of the Plan are to: (i) transfer the Trust Assets to the Liquidating Trust, which will be charged with liquidating them, reconciling Claims, prosecuting Avoidance Actions and other Remaining Actions for the benefit of Creditors and making distributions to

WA 15097527.3

Creditors and (ii) maximize value to all Creditor groups on a fair and equitable basis under the priorities established by the Bankruptcy Code and applicable law.

Debtor and the Committee believe that the Plan provides holders of Allowed Claims with a substantially greater recovery than the recovery they would receive without approval of the Plan, or upon conversion of the Chapter 11 Case, to a liquidation under Chapter 7. For the avoidance of doubt, unsecured non-priority claims will not receive a distribution until, at the very least, all allowed administrative claims have been paid. No analysis has been made as to an estimate of what final allowed administrative claims may be, or what distribution may ultimately be made to allowed unsecured claims.

The statements contained in this Disclosure Statement include summaries of the provisions contained in the Plan and in documents referred to therein. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statements of such terms and provisions.

The Plan itself and the documents referred to therein control the actual treatment of Claims against and interests in Debtor, and will be binding upon all holders of Claims against and interests in Debtor upon the Confirmation Date. In the event of any conflict between this Disclosure Statement, on the one hand, and the Plan or any other operative document, on the other hand, the terms of the Plan and such other operative documents, including, without limitation, the Liquidating Trust Agreement, are controlling.

## B.      Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, Debtor is authorized to reorganize its business for the benefit of itself, its creditors and its interest holders. Another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of a debtor's assets.

In addition, Chapter 11 may be used to effectuate an orderly liquidation of a debtor's business and assets. In contrast to a Chapter 7 liquidation, in which a trustee is appointed to conduct the liquidation and wind down of the estate, in a Chapter 11 liquidation, Debtor or its designee (such as the Liquidating Agent) remains in possession of the estate.

The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of a debtor as of the filing date. The Bankruptcy Code contemplates that a debtor, through its pre-bankruptcy management, will continue to operate its business in the ordinary course and remain in possession of its property during the case and while it seeks to negotiate and implement a plan. Any activities that are not within the ordinary course of a debtor's business must be approved by the bankruptcy court before they are undertaken.

The consummation of a plan is the principal objective of a Chapter 11 case. A plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon a debtor, any person or entity acquiring property

10

under the plan and any creditor of or equity security holder in a debtor, whether or not such creditor or equity security holder: (i) is impaired under or has accepted the plan; or (ii) receives or retains any property under the plan. Subject to certain limited exceptions and other than as provided in the plan itself or the confirmation order, the confirmation order discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes them for the obligations specified under the confirmed plan, and terminates all rights and interests of equity security holders.

## C. Means of Implementation of the Plan

**1. Vesting of Assets.** On the Effective Date, the Trust Assets will be transferred to and vest in the Liquidating Trust and be deemed contributed thereto, subject to the terms of the Plan and Confirmation Order. All property held in the Liquidating Trust for distribution pursuant to the Plan will be held solely in trust for the holders of creditors and will not be deemed property of Debtor. Upon entry of the Confirmation Order, Debtor will be authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Trust Assets to the Liquidating Trust, subject to oversight from the Liquidating Agent and the Trust Advisory Board, as applicable.

**2. Cancellation of Interests.** On the Effective Date, all of the Interests will be deemed cancelled and of no further force, whether surrendered or not.

**3. Liquidating Trust Asset Administration.** The Liquidating Agent will administer the Trust Assets pursuant to the Confirmation Documents from and after the Effective Date. To the extent they conflict, the Plan and Confirmation Order will control over the Liquidating Trust Agreement, and the Confirmation Order will control over the Plan.

**4. Termination of Committee.** The Committee will terminate automatically upon the Effective Date. Upon termination of the Committee, the Committee will be dissolved and its members shall be deemed released of their duties and responsibilities in connection with the Chapter 11 Case or the Plan and its implementation, and the retention or employment of the Committee's counsel will terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

**5. Case Administration.**

**a.** From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidating Agent will possess the rights of Debtor for all matters arising in, arising under or related to the Chapter 11 Case as set forth in the Plan. In addition to, and without limiting the generality of the foregoing, for all matters arising in, arising under or related to the Chapter 11 Case, the Liquidating Agent will: (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (ii) have the right to obtain records of, or related to, Debtor (including, without limitation, bank statements and cancelled checks); (iii) be entitled to notice and opportunity for hearing; (iv) be entitled to participate in all

11

matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (v) have exclusive standing to commence Avoidance Actions and other Remaining Actions; (vi) be entitled to request the Bankruptcy Court to enter a final decree closing the Chapter 11 Case; and (vii) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Case.

6. **Trust Professionals.** Upon the Effective Date, the Liquidating Agent may retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary in accordance with the Liquidating Trust Agreement without approval of employment or fees by the Bankruptcy Court. The Professionals retained by the Liquidating Agent are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in the Chapter 11 Case. The Liquidating Agent's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict will exist by virtue of the filing of applications by Professional Persons for allowance of Administrative Claims in accordance the Plan.

7. **INJUNCTION.** EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE CONFIRMATION DATE, EXCEPT AS OTHERWISE SET FORTH IN THE PLAN, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD LIENS, CLAIMS OR INTERESTS IN OR AGAINST DEBTOR ARE, WITH RESPECT TO OR ON ACCOUNT OF ANY SUCH LIENS, CLAIMS OR INTERESTS, PERMANENTLY ENJOINED FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING DEBTOR OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (II) ENFORCING AGAINST, LEVYING UPON OR ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT) DEBTOR OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (III) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, CLAIM OR ORDER AGAINST DEBTOR OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (IV) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIENS, CLAIMS OR INTERESTS OF ANY KIND AGAINST OR IN DEBTOR OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; (V) OTHER THAN AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, ASSERTING ANY RIGHT OF SETOFF, SUBORDINATION OR RECOUPMENT

WA 15097527.3

OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE DEBTOR OR THE LIQUIDATING TRUST OR ANY OF THEIR RESPECTIVE PROPERTY, DIRECT OR INDIRECT TRANSFEREES, DIRECT OR INDIRECT SUCCESSORS IN INTEREST, REPRESENTATIVES, AGENTS, OR PROFESSIONALS; AND (VI) TAKING ANY ACTIONS IN ANY PLACE AND IN ANY MANNER WHATSOEVER THAT DO NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN.

**8.** **Reserved.**

**9.** **Term of Bankruptcy Injunction or Stays.** Except as otherwise provided in the Plan and Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect through the imposition of the injunction set forth in the Plan.

**10.** **EXCULPATION AND LIMITATION OF LIABILITY.** NEITHER THE COMMITTEE, DEBTOR, THE LIQUIDATING TRUST, NOR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, ADVISORS, ATTORNEYS OR AGENTS OR REPRESENTATIVES ACTING IN SUCH CAPACITY, WILL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, ANY PERSON OR ENTITY, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF, THE CHAPTER 11 CASE OR THE PURSUIT OF CONFIRMATION OF THE PLAN, EXCEPT TO THE EXTENT ARISING OUT OF FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, AND IN ALL RESPECTS WILL BE ENTITLED TO RELY REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED IN THE PLAN OR LIQUIDATING TRUST AGREEMENT SHALL BE DEEMED A RELEASE OR WAIVER OF ANY CLAIMS OR REMAINING ACTIONS DEBTOR OR THE ESTATE MAY HOLD AGAINST DEBTOR'S MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, INSIDERS OR AFFILIATES.

WA 15097527.3

# VII. STATUS AND EXISTENCE OF EXECUTORYCONTRACTS AND OTHER LITIGATION

## A. Executory Contracts

**1. Contracts Deemed Rejected.** All executory contracts or unexpired leases of Debtor are subject to the Executory Contracts Bar Date and rejected as of the Confirmation Date.

## B. Litigation

**1. Potential Avoidance Action Litigation.** As previously set forth herein, the Schedules and Statements indicate Debtor made approximately $1,132,105.00 in transfers to non-insiders in the 90 days prior to the Petition Date and also made transfers to insiders in the one (1) year prior to the Petition Date, certain of which may be recoverable (the "Preferential Transfers"). Additional claims may exist for transfers made in the four (4) years prior to the Petition Date. Among other things, these transfers may be recoverable because they constitute fraudulent transfers.

As of the Effective Date, the Liquidating Agent will assume responsibility for any Remaining Actions. The Liquidating Agent will also be authorized to analyze and, if appropriate, file adversary proceedings under, *inter alia*, sections 544, 547, 548, 549 and 550 of the Bankruptcy Code to avoid and recover transfers.

In addition to the transfers described above, additional claims may exist against insiders (including directors and officers) of Debtor for pre-petition conduct. Such claims may include, among other things, breach of fiduciary duty claims.

These potential claims are not exhaustive. On behalf of Debtor and the Estate, rights to any Remaining Actions that may be identified after the Effective Date shall be preserved for the Liquidating Agent.

**2. Possible Unknown Claims.** The Liquidating Agent may have additional Remaining Actions (including Avoidance Actions) against third parties that are unknown at this time. The Liquidating Agent will be empowered to investigate Debtor's relationship with such other third parties for the purpose of evaluating potential additional litigation claims.

The recoveries, if any, from any litigation brought by the Liquidating Agent will depend on many factors, which cannot be predicted at this time. The Liquidating Agent may elect not to pursue certain Remaining Actions (including Avoidance Actions) the pursuit of which the Liquidating Agent deems not to be in the best interest of the Estate or the Liquidating Trust.

Except as specifically provided herein or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, claims or Remaining Actions (including Avoidance Actions) that the Liquidating Agent

WA 15097527.3

may choose to assert on behalf of the Estate or the Liquidating Trust in accordance with any provision of the Bankruptcy Code or any non-bankruptcy law.

All Remaining Actions shall survive confirmation, and the commencement of prosecution of Remaining Actions shall not be barred or limited by *res judicata* or estoppel, whether judicial, equitable or otherwise, based upon confirmation of the Plan. The Liquidating Agent's right to commence and prosecute Remaining Actions (including Avoidance Actions) shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

## C. Objections to Claims

Objections to certain Claims will be warranted, and from and after the Effective Date, the Liquidating Agent will have authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims. The Liquidating Agent will have standing to file objections to such Claims even if such Claims were scheduled by Debtor as undisputed, liquidated and non-contingent.

## VIII. CONFIRMATION AND CONSUMMATION PROCEDURE

The Bankruptcy Court may confirm the Plan only if it determines that the Plan complies with the requirements of Chapter 11, including, among other things, that: (i) the Plan has properly classified Claims and interests; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) Debtor and the Committee have complied with applicable provisions of the Bankruptcy Code; (iv) Debtor and the Committee have proposed the Plan in good faith and not by any means forbidden by law; (v) the Plan has been accepted by the requisite votes of all Classes of Creditors (except to the extent that "cramdown" is available under section 1129(b) of the Bankruptcy Code); (vi) the Plan is in the "best interests" of all holders of Claims or interests in an Impaired Class; (vii) the Plan is "feasible" in that confirmation of the Plan is not likely to be followed by the liquidation or need for further restructuring of Debtor, unless the Plan contemplates liquidation; and (viii) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of such fees on the Confirmation Date.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

## A. Solicitation of Votes

Under the Bankruptcy Code, only classes of claims and interests that are impaired under the plan are entitled to vote to accept or reject a plan. A class is impaired if the legal, equitable or contractual rights to which the holders of claims or interests are entitled are modified, other than by curing defaults and reinstating the debt. Under sections 1126(f) and (g) of the Bankruptcy Code, classes of claims and interests that are not impaired are conclusively presumed to have accepted the plan and are not entitled to vote on a plan, and classes of claims and interests whose holders will receive or retain no property under the plan are deemed to have rejected a plan and are not entitled to vote on a plan. Creditors who hold disputed or disallowed claims are not entitled to vote to accept or reject the plan.

Under the Plan, the holders of Allowed Claims in Classes 2 and 3 are entitled to vote to accept or reject the Plan. All other Classes of Claims or interests are deemed under the Bankruptcy

15

Code to have accepted or rejected the Plan. This Disclosure Statement and an appropriate ballot are being distributed to all holders of Claims who are entitled to vote on the Plan.

Under the Bankruptcy Code, a class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims properly voted in that class, voted to accept.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Any ballot that is properly completed, executed and timely returned to Epiq but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan, will be deemed to be a vote to accept the Plan. Whenever a Creditor casts more than one ballot voting the same Claim before the Voting Deadline, the last ballot received before the Voting Deadline is deemed to reflect the voter's intent and will therefore supersede any prior ballots. Creditors must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their vote, and thus a ballot that partially accepts and partially rejects the Plan will not be counted.

## B. The Confirmation Hearing

The Confirmation Hearing is scheduled for _____ __, 2020 at _____ p.m. before the Bankruptcy Court at _____. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of section 1129 of the Bankruptcy Code. Prior to the Confirmation Hearing, the Committee will submit a report to the Bankruptcy Court reflecting the votes received with respect to the acceptance or rejection of the Plan by the parties entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of the Plan. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on all required parties on or before the Objection Deadline, which is the confirmation objection deadline that has been set by the Bankruptcy Court. Unless an objection to confirmation is timely served and filed, it may not be considered by the Bankruptcy Court.

## C. Confirmation

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan: (i) has been accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class; (ii) is feasible; and (iii) is in the "best

16

interests" of creditors and stockholders that are impaired under the plan and that vote, or are deemed, to reject the plan.

### 1. Unfair Discrimination and Fair and Equitable Tests

To obtain confirmation of a plan over the objection of a class of claims or interests that rejects such plan, it must be demonstrated that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to each such non-accepting class. In order for a plan to be found to be "fair and equitable" and thus subject to confirmation by "cramdown" under section 1129(b) of the Bankruptcy Code, Debtor and the Committee must demonstrate:

> **a.** **For a Class of Unsecured Creditors:** That either: (i) each impaired unsecured creditor receives or retains, under the plan, property of a value equal to the amount of its allowed claim; or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

> **b.** **For a Class of Interests:** That either: (i) each holder of an interest will receive or retain, under the plan, property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest; or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

As described above, holders of Interests in Class 4 are presumed, under section 1126(g) of the Bankruptcy Code, to have rejected the Plan. Debtor and the Committee request confirmation of the Plan under section 1129(b) of the Bankruptcy Code, notwithstanding the deemed rejection of the Plan by Class 4. Debtor and the Committee believe that the Plan may be confirmed pursuant to the above-described "cramdown" provisions over the dissent of Class 4 in view of the terms of the Plan. Debtor and the Committee believe that the treatment under the Plan of the holders of Interests in Class 4 satisfies the "fair and equitable" test because there are no Classes junior to such non-accepting Classes that will receive or retain any property under the Plan and since Class 3, whose Claims have priority over the Interests classified in Class 4 to the extent Allowed, are not being paid in full under the terms of the Plan and further will share Pro Rata in the Trust Assets. In addition, Debtor and the Committee do not believe that the Plan unfairly discriminates against Class 4.

### 2. Best Interests Test

With respect to each impaired class of claims and interests, confirmation of a plan requires that each holder of a claim or interest either: (i) accept the plan; or (ii) receive or retain under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Debtor and the Committee believe that Holders of Impaired Claims and interests in each Impaired Class under the Plan would receive significantly less under a Chapter 7 liquidation than under the Plan.

To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor was liquidated under Chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from such debtor's assets in a Chapter 7 case

WA 15097527.3

under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the Trust Assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of the bankruptcy case. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as that of counsel and other professionals retained by the trustee, asset disposition expenses and all unpaid expenses incurred until the liquidation is completed.

Debtor and the Committee believe that the Plan meets the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code. Debtor and the Committee believe that the members of each Impaired Class will receive significantly greater value under the Plan than they would in a Chapter 7 liquidation proceeding due to: (i) the value the Liquidating Agent will bring to the Estate in reconciling overstated and invalid Claims and from Avoidance Actions and other Remaining Actions; and (ii) avoiding the additional expenses associated with conversion to a Chapter 7 case.

With respect to (i), although it is possible that a Chapter 7 trustee will vigorously pursue objections to Claims and Avoidance Actions and other Remaining Actions, Debtor and the Committee submit this is highly speculative because the pursuit of such litigation is not a precondition to the appointment of a Chapter 7 trustee, and the Chapter 7 trustee may ultimately choose not to challenge Claims or to pursue Avoidance Actions and other Remaining Actions.

With respect to (ii), Debtor and the Committee submit that a significant distinction between the Plan and converting the Chapter 11 Case to Chapter 7 is the substantial Chapter 7 administrative costs that will result from such conversion. Pursuant to section 326 of the Bankruptcy Code, the statutory Chapter 7 trustee fee (the "Chapter 7 Trustee Fee") can be as high as 25% of the first $5,000 disbursed, 10% on any amount disbursed in excess of $5,000 but not in excess of $50,000, 5% on any amount disbursed in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3% on any amounts in excess of $1,000,000. Any such Chapter 7 Trustee Fee will directly reduce any recovery for Creditors.

A Chapter 7 trustee will likely also retain Professionals for purposes similar to those retained by the Liquidating Agent. The Chapter 7 trustee and his or her Professionals, however, may be unfamiliar with Debtor's operations and the Chapter 11 Case. Accordingly, the Chapter 7 trustee and his or her Professionals may be required to devote considerable time reviewing Debtor's books and records and the events of the Chapter 11 Case occurring prior to the conversion to Chapter 7. Given this reality, Debtor and the Committee submit that the fees of a Chapter 7 trustee's Professionals will exceed the fees of the Liquidating Agent's Professionals.

The rates of those Professionals retained by the Chapter 7 trustee, on the one hand, and the Liquidating Agent, on the other hand, may vary. For instance, one group of Professionals may have higher rates than a group of other Professionals. Assuming that both groups of Professionals

WA 15097527.3

are equally efficient in their approach and effectiveness in the results obtained, this factor may increase the cost of administration.[2]

Debtor and the Committee believe that the Plan will provide a recovery that is greater than the amount each Creditor would receive under a Chapter 7 liquidation. The Liquidating Agent will retain Professionals, but given the added expense of the Chapter 7 trustee's Professionals to become generally familiar with Debtor's Estate, the Committee submits that the fees of any Professionals of the Liquidating Agent should be less than the professional fees of a Chapter 7 trustee. Accordingly, the Plan meets the "best interests" test.

**3.    Conclusion**

For the foregoing reasons, Debtor and the Committee submit that the Plan, as proposed, meets each of the requirements for confirmation under section 1129 of the Bankruptcy Code.

## IX.    TAX CONSEQUENCES

Debtor and the Committee are not qualified to advise creditors of the specific respective tax impact on each of them as a result of treatment provided in the Plan and therefore make no representation as to that.

THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCE TO EACH HOLDER OF A GENERAL UNSECURED CLAIM. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CHAPTER 11 CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH HOLDER OF A GENERAL UNSECURED CLAIM OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER OF A GENERAL UNSECURED CLAIM AS A RESULT OF THE PLAN.

---

[2] Given that the Professional groups have not been – and, in fact, cannot be – identified at this time, it remains impossible to fully evaluate this issue for purposes of voting on the Plan.

19

WA 15097527.3

# X.    RISK FACTORS

Holders of Claims against and interests in Debtor should read and consider carefully the information set forth below, as well as other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. This information, however, should not be regarded as necessarily setting forth the only potential risks involved in connection with the Plan and its implementation.

## A.    Failure To Satisfy Vote Requirement

In the event that sufficient votes accepting the Plan are not received and, as a result, Debtor and the Committee are unable to confirm the Plan as proposed, Debtor and the Committee will assess the alternatives available to it, including: (i) amending the Plan; or (ii) converting the Chapter 11 Case to Chapter 7 liquidation proceedings. There is substantial risk that either of these alternatives will result in less favorable treatment of Claims and interests than that provided in the Plan.

## B.    Non-Consensual Confirmation

In the event any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm such Plan at Debtor and the Committee's request if at least one Impaired Class of Claims has accepted the Plan (with such acceptances being determined without including the vote of any "insider" in such Class), and, as to each Impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such dissenting Impaired Class(es). Because the Plan deems Class 4 to have rejected the Plan, these requirements must be satisfied with respect to such Classes. Debtor and the Committee believe that the Plan satisfies these requirements, although there can be no assurances that the Bankruptcy Court will make the findings necessary to reach this result.

## C.    Risk of Non-Occurrence of the Effective Date

Although Debtor and the Committee believe that if the Plan is confirmed, the Effective Date will occur soon after the Confirmation Date of the Plan, there can be no assurance that all conditions to the occurrence of the Effective Date will occur. In the event the Effective Date does not occur, Debtor and the Committee will assess the alternatives available to them at that time.

## D.    Classification and Treatment of Claims and Interests

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims against, and interests in, Debtor. The Bankruptcy Code also provides that, except for certain Claims classified for administrative convenience, the Plan may place a Claim or interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or interests of such Class. Debtor and the Committee believe that all Claims and interests have been appropriately classified in the Plan.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or interest of a particular Class unless the holder of a particular Claim or interest agrees to a less

20

favorable treatment of its Claim or interest. The Committee believes that the Plan treats each Claim or interest in a given Class equally, thus satisfying this requirement.

To the extent that the Bankruptcy Court finds that the Plan does not satisfy these requirements, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

## E.     Amount of Allowed Claims

The total amount of all Claims filed in the Chapter 11 Case may materially exceed the estimated amounts of Allowed Claims assumed in the development of the Plan and in the valuation estimates provided above. The actual amount of all Allowed Claims in any Class may differ significantly from the estimates provided in this Disclosure Statement. Accordingly, the amount and timing of the distributions that will ultimately be received by any particular holder of an Allowed Claim in any Class may be materially and adversely affected if the estimates are exceeded as to any Class.

In addition, the Liquidating Trust may not have sufficient assets to pay Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims in full in the Chapter 11 Case, including the costs and expenses of pursuing any and all Remaining Actions.

## XI.     ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

Debtor and the Committee believe that the Plan affords holders of Claims the potential for the greatest recovery and, therefore, is in the best interests of such holders.

If, however, the requisite acceptances are not received, or the Plan is not confirmed and/or consummated, the theoretical alternatives include: (i) formulation of an alternative plan of liquidation; or (ii) liquidation of Debtor and the Estate under Chapter 7 of the Bankruptcy Code.

## A.     Alternative Plan(s) of Liquidation

If the Plan is not confirmed, the Committee or any other party may attempt to formulate and propose a different plan or plans of liquidation. Debtor could suffer from liquidity issues during an extended Chapter 11 process, while a consensual plan of liquidation was formulated and confirmed.

Debtor and the Committee believe that the Plan, as described herein, enables Creditors to realize the greatest possible value under the circumstances and, compared to any other or later alternative plan of liquidation, has the greatest likelihood of being confirmed and consummated.

WA 15097527.3

**B.     Chapter 7 Liquidation of Debtor**

If no plan is confirmed, Debtor may be forced to liquidate under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate Debtor's remaining assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.  It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or interests in Debtor.

Debtor and the Committee believe that in a liquidation under Chapter 7, before Creditors received any distribution, additional administrative expenses related to the appointment of a trustee and the trustee's attorneys, accountants and other professionals would cause a substantial diminution in the value of the Estate.  The assets available for distribution to Creditors would be reduced by such additional expenses and by claims, some of which would be entitled to priority. The liquidation analysis, or "best interests" test, suggests that unsecured Creditors would receive *de minimis* distributions on their Claims in a liquidation.

## XII.     CONCLUSION

Debtor and the Committee submit that under the Plan, holders of Unsecured Claims stand to receive a meaningful recovery on their Claims, while at the same time avoiding the additional fees and expenses that would be incurred upon conversion to Chapter 7.  Therefore, Debtor and

WA 15097527.3

the Committee believe that the distributions provided for in the Plan are fair and equitable, and Debtor and the Committee strongly recommend acceptance of the Plan.

If you are eligible to vote on the Plan, please do so now by completing and returning the enclosed ballot.

**SPENCER FANE LLP**

/s/Scott J. Goldstein

| | |
|---|---|
| Scott J. Goldstein | KS Fed #70505 |
| Andrea M. Chase | KS #26307 |
| Eric L. Johnson | KS #20542 |

1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216– Fax
sgoldstein@spencerfane.com
achase@spencerfane.com
ejohnson@spencerfane.com

ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

and

**KLENDA AUSTERMAN LLC**

/s/J. Michael Morris

| | |
|---|---|
| J. Michael Morris | KS Bar No. 9292 |
| Eric W Lomas | KS Bar No. 23769 |
| Christopher A. McElgunn | KS Bar No. 13369 |

1600 Epic Center
301 North Main Street
Wichita, KS 67202-4816
Telephone:  (316) 267-0331
Facsimile:  (316) 267-0333
elomas@klendalaw.com
cmcelgunn@klendalaw.com
jmmorris@klendalaw.com

**ATTORNEYS FOR DEBTORS**

23